No. 31,493

D. P. HOLDEN, *Appellee*, v. THE GREAT LAKES PIPE LINE COMPANY, *Appellant*.

(29 P. 2d 1076.)

Opinion filed March 10, 1934.

*Thomas E. Wagstaff, Jay W. Scovel* and *Robert W. Wagstaff,* all of Independence, for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages to plaintiff's herd of dairy cows and other incidental damages caused by the discharge of deleterious substances from defendant's storage tanks into a natural course which flowed through plaintiff's cow pasture. His seven milch cows drank of the polluted water, which sickened them; their milk yield greatly decreased; and the value of the cows was depreciated.

On issues joined, the cause was tried before a jury which rendered a general verdict for plaintiff in the sum of $1,011, and made special findings which read:

"1. Do you find that defendant permitted certain liquids and poisonous and deleterious substances to escape from one of its storage tanks in large quantities on June 3, 1932? A. Yes.

"2. If you answer question No. 1 in the affirmative, state whether or not this liquid or substance flowed onto or into plaintiff's pasture. A. Yes.

"3. If you answer questions numbered 1 and 2 in the affirmative, state what time of day, if you are able to determine, said liquids or substances began to flow into or upon plaintiff's pasture. A. Sometime before noon June 3, 1932.

"4. If you answer questions numbered 1 and 2 in the affirmative, state about the time of day plaintiff discovered this liquid or deleterious substance in the pasture where his milch cows were located. A. About noon June 3, 1932.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"6. State what, if anything, plaintiff did upon making this discovery to prevent his cows from becoming injured by drinking this alleged poisonous and deleterious substance. A. Removed cows.

"7. State whether or not plaintiff knew or had reason to believe that said liquids and poisonous and deleterious substances would be injurious to plaintiff's cows if they should drink any substantial amount of it. A. No.

"8. State if you are able to determine from the evidence, what was the fair and reasonable cash market value of plaintiff's cows immediately prior to their alleged injury. A. $50 per head.

"9. If you find in favor of the plaintiff and against the defendant, state the amount you allow him for (*a*) Loss of profits from milk, (*b*) Depreciation in value of cows. A. (*a*) $728, (*b*) $283."

Judgment was entered on the verdict, and defendant assigns various errors, the most serious of which relates to the excessiveness of the verdict.

Touching the item of $728 included in the general verdict for loss of profits from milk, defendant makes two contentions—first that under the law and the instructions of the court it was his duty to minimize his damages by purchasing other milch cows to supply his trade, and the evidence was that all dairymen have to renew their herds from time to time to supply their trade. The testimony was that milch cows were purchasable at from $35 to $50 per head. If plaintiff had disposed of his cows at $15 per head (the lowest of value placed ·on them after they were sick) and had bought seven other cows at $50 per head, his total net loss would have been $245, which, it is argued, would have enabled him to supply his milk trade and would have prevented any substantial loss of profits.

Looking into the evidence of milk sales before and after the cows drank the polluted water, plaintiff testified that in May he was milking eight cows, seven of which drank the polluted water; that he had thirty customers, some wholesale and some retail. Prior to June 3, 1932, his average daily milk production was 245 pounds, which, according to the only testimony in the record, would be almost 28½ gallons or 114 quarts. Descending into details, plaintiff gave specific figures of the daily milk yield of the seven affected cows, which aggregated 250 pounds of milk for May, and 108.75 pounds for June—a shrinkage of 56.5 per cent.

Plaintiff testified that his total sales of milk and cream after June 3 were $5.34 per day, although when asked to give details he could only show total sales amounting to $4.86 per day. The only witness who testified to profits said that on milk sales of $8 per day the profit would be $6—which would be 300 per cent. The evidence was that the milking period for a cow was from six to nine months—an average of 7½ months.

The seven cows had been fresh for periods ranging from six months to twenty days, so the average time they could have continued to give milk was three months, fifteen days.

It will thus be seen that by none of the evidential factors above mentioned with their fair deductions, nor by all of them together, can the jury's special finding of $728 as plaintiff's loss of profits from milk be sustained.

A resort to the brief on plaintiff's behalf does not dissipate this difficulty. It is useless for him to repeat the allegation of his pleading that the cows were worth $60 per head. The jury said they were worth $50 per head. He says the proceeds of dairy sales were $8.55

per day. We cannot find any testimony in the abstract to support that statement, and no paging of the abstract is given to assist us. It is also asserted (without record citation) that plaintiff's dairy sales were $5 per day less after the damage to the cows was sustained. Even so, that loss in value of sales per day would only have entailed a loss of profits of $3.75 per day—adopting as gospel truth the evidence which disclosed a profit of 300 per cent on milk sales. That profit of $3.75 per day could only have lasted until these seven cows went dry, which would have been in three months, fifteen days, at the latest. On that basis the loss of profits would be $431.25. Various other methods of calculating plaintiff's loss of profits may be deduced from the testimony, but none more generous to plaintiff than the one just mentioned. And in respect to the damage to the cows, since they were valued by the jury at $50 per head before June 3, and under the evidence may have been worth as little as $15 per head after that date, the total net loss on the cows could have been no more than $245. The aggregate of these estimates would be $676.25, and so much of the general verdict as exceeds that amount is difficult to justify or sustain on any theory of the evidence.

Passing for the moment to another objection to the judgment, it is argued that plaintiff did not take necessary precautions to entitle him to any recovery. That argument is based on the jury's findings Nos. 4 and 6. The evidence shows that plaintiff did not remove the cows until milking time in the evening, although he had discovered the deleterious substance in the water about noon. But it was not shown that plaintiff knew at that time the deleterious substance would injure his cows, and the jury's seventh finding is that he did not.

We find nothing further in this record to justify discussion. This court is satisfied that plaintiff's cows were damaged, and that he sustained a loss of profits; and while we can find no evidence to justify a verdict of $1,011, by giving generous credence to the evidence and by making liberal deductions therefrom a verdict and judgment for as much as $750 might have been permitted to stand. The verdict for $1,011 was clearly excessive, and the order of this court will be that the cause be remanded to the district court with instructions to give plaintiff the option to accept a judgment in his behalf for $750, with the alternative of a new trial.

It is so ordered.